# NATHANIEL BRUCE, ADM'R, v. CONTINENTAL LIFE INSURANCE CO.

## [In Chancery.]

*Chancery Practice. R. L. s. 730. Life Insurance. Non-Forfeiture. Paid–up Policy.*

1. MASTER. Under sec. 730, R. L., the Supreme Court will not revise any error in admitting testimony by a master, unless an exception is taken thereto and filed in the Court of Chancery.
2. NON-FORFEITURE POLICY. A " non-forfeiture," " paid-up " policy of life insurance is not forfeited by reason of failure to pay annual interest on notes, which were given for part of the premiums, and which, it was found, were regarded by the company as a loan to the assured.
3. One condition of the policy was, that on failure to pay the interest on the notes the policy should " cease and determine " " except as hereinafter provided." Then followed the condition, that if, after the company had received two or more premiums, there should be default, it would issue a paid-up policy for as many tenth parts of the sum insured as premiums had been paid. The policy was issued for $1,000. When four premiums had been paid, part in cash and part in notes which were overdue, except that interest had been paid, the assured claimed a paid-up policy for four tenths; *Held,* (*a*) that there was no forfeiture, and that the orator was entitled to a decree for $400, deducting the notes reduced by the dividends or profits, that belonged to the policy; (*b*) that the profits were such as the company had in fact earned; (*c*) that it was the duty of the company to preserve its solvency, and it had a right to change from the percentage to the contributive plan; (*d*) and that the circular issued by the company could be used in determining the meaning of the policy.

BILL IN CHANCERY.   Heard on the report of a special master, June Term, 1885, Caledonia County, Ross, Chancellor.   It was decreed:   "That the orator is entitled to a paid-up policy, in the defendant company, upon the life of Merrill T. Bruce, for the sum of $400, payable December 30, 1882, with an accounting for dividends, adjudged to apply upon the notes of Merrill T. Bruce, held by the defendant; and that, to avoid circuity of action, the orator recover of the defendant, as the sum due upon said policy, after adjusting said dividends, profits, and notes, the sum of $360.72,

with interest thereon, from December 30, 1882, and the costs of this suit."

It appeared from the report, that the policy was dated December 30, 1870; that it was a "ten year endowment policy"; that the annual premiums were $104.86; that, on the receipt of the policy, the assured paid $62.92 in cash and gave his note for $41.94, paying the interest on it in advance; that he paid his premiums in the same manner during the second, third, and fourth years, paying the interest on all the notes in advance, "and all said premiums and interest were to the satisfaction of said company"; that said M. T. Bruce, on November 1, 1875, made application to the company for a paid-up policy; that the company changed from the percentage to the contributive plan on December 2, 1873; that said M. T. Bruce deceased January 20, 1883, and that the orator is administrator of his estate. The prayer of the bill was, that the defendant execute and deliver to the orator a paid-up policy for the sum of $400 with profits ascertained by accounting; and, to avoid circuity of action, that the defendant be decreed forthwith to pay the sum due upon said policy and said accounting, with interest.

The master found as to the dividends: "If the court are of opinion that the orator is entitled to such dividends as the company paid on all endowment policies that have been in existence four years, from 1868 to 1873, inclusive, then the dividends would be 40 per cent. of the premiums, or just the amount of the notes: and the notes would be paid by the dividends and the orator would be entitled to $400, as of December 30, 1882, without deduction. To this, interest added to June 2, 1885, gives the sum of $458.12."

"If, the court are of opinion that the notes are in part paid by dividends, but that the dividends are only such as the company voted to pay in case the policy was renewed by successive payments, then the dividends would be four in number of $24.57, and should have been indorsed and allowed upon the notes December 30, on each of the four years, 1874, 1875, 1876, and 1877. These deductions would

make the notes amount to $106.09, December 30, 1882, and that sum deducted from $400, leaves $293.91, due December 30, 1882, with interest since to June 2, 1885, in all, $338.08."

" If the court are of the opinion that the orator is entitled by the terms of the policy and the facts reported to have a paid-up policy of $400 only upon condition of paying the notes and interest in full with no allowance or deduction for dividends, then the four notes, the interest having been paid in advance, up to December 30, 1874, would amount, with interest up to December 30, 1882, to the sum of $236.80, which sum deducted from $400, would leave due December 30, 1882, the sum of $163.20, which, with interest from that date to June 2, 1885, amounted to $245.30."

The other facts are sufficiently stated in the opinion of the court.

*C. W. Porter*, for the defendant.

The interest upon the notes given for premiums was, under the agreement as claimed, to be paid in advance.

The company contracted upon the basis of the prompt payment of interest and a failure to pay impaired the fund from which the payments of dividends and liabilities must be made.

The failure to pay the interest in advance upon the notes falling due December 30, 1874, avoided the policy and all payments thereon; and all dividends were forfeited to the company. *Patch* v. *Ins. Co.* 44 Vt. 481; *Atty.-Gen.* v. *Ins. Co.* 82 N. Y. 172; *Ins. Co.* v. *Robinson*, 40 Ohio St. 270; *Nettleton* v. *Ins. Co.* 6 Ins. L. J. 426.

As the agreement was that dividends or profits should be applied to cancel the notes, they could not be applied in payment of interest. The company had a right to change its plan of distribution of surplus. It was under no obligation to Bruce respecting the amount of dividends, as he was informed by Farr that the amount " depended upon the success of the company."

*Ide & Stafford*, for the orator.

There has been no forfeiture of the policy. The defend-

ant argues that we have not paid the premiums because we have not continued to pay the interest. But we have paid our premiums in the way directed by the defendant itself; and it is nowhere stipulated in the policy that a failure to pay interest shall work a forfeiture. Moreover, we have paid the interest on the premium notes for four years, and so have, even in that sense, made four complete annual payments. The profits held by the defendant should be applied upon the notes; and when these have been applied, and the notes thus reduced have been deducted from the face of the paid-up policy promised us, we are entitled to the balance as the amount of "the insurance paid for" by us. *Franklin L. Ins. Co.* v. *Wallace,* 93 Ind. 7; 4 Bigelow, Ins. Cas. 633; 5 Id. 137, 145, 559.

The defendant's contention would make nugatory and senseless those other parts of the contract and representations of the agent, which informed the insured that he would be entitled to a paid-up policy, after the payment of two annual premiums. The dividends to be applied on the notes are those declared during the years in which the notes were given. These would be sufficient to pay the notes, as found by the master. *Currier* v. *Ins. Co.* 57 Vt. 496; *Brooks* v. *Ins. Co.* 8 Rep. 774; *S. C.* 16 Blatchf. 182; 20 Fed. Rep. 222.

The question as to the admission of evidence is not before this court, as no exceptions were taken. *Winship* v. *Waterman,* 56 Vt. 181.

The opinion of the court was delivered by

POWERS, J. It is quite clear that much inadmissible evidence was received by the master in the hearing before him. The testimony of Blodgett and Dewey and certain exhibits offered in connection therewith were objected to by the defendant, but the objection is not available in this court. Sec. 730 R. L. declares that "no questions in regard to the admission or rejection of evidence by the masters

shall be heard in the Supreme Court, unless such objection is made by exception, duly filed, to the report, in the Court of Chancery."

No such exception was filed in this case and we must give effect to the statute as it reads.

The first question arising upon the master's report is whether the policy in question has been forfeited so that the right to a paid-up policy has been lost.

The annual premium payable on Bruce's policy in advance was $104.86. Under the rules of the company this could be paid in cash, or one half in cash and the other half by note running one year, the interest thereon being paid in advance.

Bruce paid his annual premiums on the half cash and half note plan for four years, and then claimed a paid-up policy for four tenths of the sum insured.

It was represented to Bruce before taking his policy by Farr, the company's agent, and by circulars issued by the company, that the policy would be non-forfeitable after the payment of two annual premiums. In one of the circulars the company uses this language: "Should future payments cease after not less than two have been made, *the policy is not void*, but *remains binding by its terms, without further payment of premiums* for as many tenths * * * of the sum insured as there has been annual premiums paid. The non-forfeiture policies of the company are so written that the payment of two annual premiums *render them binding* for the amount of the insurance paid for, *without further attention on the part of the holder*, thus *obviating* all *possible danger of loss*, either through inattention or inability to meet subsequent payments."

When the policy was issued it provided in its third condition, that "if the assured shall not pay the said annual premiums on or before noon of the several days hereinbefore mentioned for the payment of the same and the interest annually in advance on any outstanding premium notes

which may be given for any portion thereof or shall not pay at maturity any notes or obligations given for the cash portion of any premium or part thereof, then and in every such case, this policy shall cease and determine, and said company shall not be liable for the payment of the sum insured or any part thereof, except as hereinafter provided." The fourth condition then follows: "That if, after the receipt by this company of two or more annual premiums upon this policy, default shall be made in the payment of any subsequent premium when due, then, notwithstanding such default, this company will convert this policy into a paid-up policy for as many tenth parts of the sum originally insured as there shall have been complete annual premiums paid when such default shall be made."

The language of these conditions leaves no doubt as to the right of Bruce to a paid-up policy for four tenths of the sum for which he was insured. If the language were ambiguous, Bruce had the right to construe it as the company had declared its meaning in the circular above referred to. But we think it needs no extraneous aid in its construction.

The very end aimed at in offering and receiving the reduced or paid-up policy is, as the company's circular declares, to obviate "all possible danger of loss." The paid-up policy issues as a redemption from a forfeiture of the original policy which otherwise would "cease and determine," for non-payment of premiums. It can issue only in case two full premiums have been paid and if so many have been paid, the right to it is given to the policy holder by the original policy itself. Thus his right to it is a contract right that inheres in the original policy.

When issued it is not itself subject to forfeiture for further non-payment of premiums. If any are payable in cash, notes, or interest, the company must stand for their collection on the promise of the policy holder to pay. If the paid-up policy could be forfeited for further non-payment

of premiums, it becomes a delusion and a snare. The policy holder is no better off than before, so far as the risk of forfeiture is concerned. May Ins. ss. 345, 363.

The paid-up policy issues for so many tenths of the sum insured as annual payments have been made and is based on the theory that insurance to such amount has been fully paid for.

When Bruce elected to stop his payments he was at once entitled to have his policy converted into a paid-up policy freed of all risk of forfeiture for non-payment of further premiums.

Such paid-up policy would not mature, however, till the end of the twelve years it had originally to run, unless Bruce sooner died. At maturity of the policy the company had the right, by the terms of the policy, to deduct from the sum payable all indebtedness due the company on account of the policy.

In the case of *Mary A. Cowles* v. *This same Company,* 1 New Eng. Rep. 247, the precise question here made arose upon the same kind of a policy. The company claimed that the reduced or paid-up policy had been forfeited by the non-payment of interest on three premium notes. Says Doe, Ch. J.: "The forfeiture clause qualified by the provision for a 'paid-up' policy does not mean that the reduced 'paid-up' 'non-forfeiture' insurance is annually forfeitable for non-payment." And again: "The original contract did not make the non-payment forfeiture clause applicable to the promised 'paid-up' policy into which the original could be converted."

The master says that the company regarded notes given for part of the annual premiums as loans made to the policy holder. Upon its own theory then a failure to pay interest on such notes does not work a forfeiture. May Ins. s. 345, (a), and cases cited.

The case at bar is unlike *Patch* v. *Ins. Co.* 44 Vt. 481. There the question arose upon the construction of a paid-up

policy, issued in place of a former one, surrendered, which contained an express stipulation that certain sums of interest should be paid in advance. The action was assumpsit on the paid-up policy and no question was made whether the paid-up policy was such in form as the insured was entitled to. Such as it was he accepted it, and the action was upon it in the form it was issued and accepted.

The orator being then entitled to a paid-up policy, the question next arises as to its amount.

The time for the maturity of the policy having arrived, to avoid circuity of action a decree may be passed for the present payment of the amount of the policy to which the orator is entitled. Equity will treat that as already done which should have been done.

The defendant is entitled to deduct from the $400, which the paid-up policy should have issued for, the outstanding notes and interest thereon held by it, less any dividends or profits in its hands that properly belong to such policy. The policy itself is described in the margin as a "non-forfeiture endowment policy with profits." But the policy is silent respecting the meaning of "profits" in this indorsement, and we are left to ascertain the meaning from other sources.

Farr represented to Bruce that the profits to which he would be entitled would come in the way of dividends, which would be payable after four annual premiums had been paid, and that if he took a paid-up policy the dividends would be applied when he took such policy.

The question is not what profits the company ought to have earned but what in fact it did earn. The company was bound to conduct its business in a way to preserve its solvency. It owed this duty to all classes of its policy holders, and Bruce, as one of them, had no right to share in any plan of distribution of profits that worked insolvency. When the company then discovered that the percentage plan was disastrous to the common interest of its policy holders, it became a duty, grounded in the very theory of

insurance, to adopt some other plan that would best subserve the interests of all persons for whom it acted.

The change to the contributive plan was warrantable and Bruce was entitled to dividends made under it, of $24.57 for four years.

The decree is reversed and the cause remanded, with directions to enter a decree for the orator to the effect that he is entitled to a paid-up policy on the life of his intestate for the sum of $293.91 as of December 30, 1882; and, to avoid circuity of action, that the defendant be ordered to pay the orator said last mentioned sum with interest thereon from December 30, 1882, with costs of suit.