WILLIAM G. MCQUITTY *et ux. vs.* THE CONTINENTAL LIFE INSURANCE COMPANY.

A married woman took out a policy of insurance on her own life, payable ninety days after evidence of her death, or to herself if surviving at the end of fifteen years ; all indebtedness to the company on account of the policy being first deducted. The premium was payable yearly, partly by note and partly in cash. The policy was to be void in case of default in payment of premiums, or of interest in advance on the premium notes, or of the notes, provided that, after two annual premiums had been paid, the policy might be converted into a "paid-up" policy. In case the policy became void, all payments should be forfeited to the company. The policy contained on its margin, "Non-forfeiture endowment policy with profits." After paying two premiums in notes and cash, the insured applied for a paid-up policy, released by quitclaim to the company all claims on the policy except as to two fifteenths of its face amount, and received the same policy back from the company, with a statement written on it that it was binding for two fifteenths of its face, "subject to the terms and conditions expressed in this policy and in the quitclaim." . . . She made no further payments on the notes she had given, either of principal or interest.

*Held,* that the policy was forfeited.

*Held,* further, that the marginal words, "Non-forfeiture endowment policy with profits," could not be read as a part of the contract.

[1] *Held,* further, that such a policy was within the scope of Pub. Stat. R. I. cap. 166, § 21.

*Held,* further, that under Pub. Stat. R. I. cap. 166, a married woman could invest her separate estate in insurance on her life.

*Held,* further, that the policy was not void *ab initio,* though the premiums were in part paid by notes which, as such, did not bind the insured married woman who made them.

*Held,* further, that the company could set up the forfeiture by non-payment of interest in an action on the policy.

EXCEPTIONS to the Court of Common Pleas.

*July* 23, 1887.   DURFEE, C. J.   This is an action of *assumpsit* for money had and received to the use of the female plaintiff Mary A. McQuitty, wife of William G.   The action was begun in the Court of Common Pleas, and was there tried on an agreed statement of facts, from which the case appears to be as follows, to wit:   The said Mary, on November 16, 1870, being then and ever since then a resident of Rhode Island, procured in Rhode Island, through its Rhode Island agent, F. W. Hart, a policy of insurance, by which the defendant corporation agreed, in consideration of the representations made in the application, and of the annual premium of $87.49, to be paid every year on or before November 16th for the term of fifteen years, to insure the life of said Mary, for her benefit, in the sum of one thousand dollars, to be paid within ninety days after due notice and satisfactory evidence of her death during the continuance of the policy, or, if she should survive November 16, 1885, to be paid then to her, deducting all indebtedness to the company on account of the policy, if any then existing.   A note in the margin of the policy states that the annual premiums are payable, $34.99 note, $52.50 cash, each twelve months from November 16, 1870.   The policy was issued subject to the condition that it should cease and determine in case of default on the part of the assured in paying the premiums, or interest in advance on the outstanding premium notes, or the notes themselves at maturity ; with the *proviso*, however, that if, after the payment of two or more of the annual premiums, the assured should make default in paying a subsequent premium, the company would convert the policy into a " paid-up " policy for as many fifteenths of the sum insured as there had been complete premiums paid, the application for conversion, with return of the policy, being made within one year after the default.   The policy was also issued upon the express condition that, in every case where the policy should cease, or be or become null and void, all payments thereon, and all dividend credits accruing therefrom, should be forfeited to the company.   The first two premiums were paid by said Mary in money and notes as required, and receipts therefor given to her by the company.   In 1872 said Mary decided to make default and convert the policy

into a " paid-up " policy for $133.33, the *pro rata* amount stipulated for the premiums previously paid; and accordingly she remitted to the company $4.20 interest on the two outstanding notes and applied for such policy, agreeing in her application " to pay to said company annually, in advance, the interest on all outstanding notes given in part payment of annual premiums." Thereupon the company wrote across the face of the policy the following, to wit : " This policy, having lapsed after two annual payments, is hereby recognized as binding upon the company for two fifteenths thereof, or one hundred and thirty-three and thirty-three one hundredths dollars, subject to the terms and conditions expressed in this policy and in the quitclaim to the company bearing even date with this entry." Signed, " Robt. Beecher, Sec'y," and dated, " Hartford, Conn., November 16, 1872." The quitclaim referred to is a quitclaim or release expressed in the application to the company of all claims to the sum assured by the policy except the two fifteenths.

Mrs. McQuitty never paid any further interest on the notes, and the notes are still outstanding unpaid. She demanded payment of the policy after maturity, and the company refused it. The company claims that she has forfeited her policy and all moneys paid by her. She claims that, being a married woman, she was incapable of contracting, and is therefore entitled to recover the moneys paid by her under the policy. It is agreed that if the court find, on the facts as stated, the policy and moneys forfeited, judgment shall be for the defendant for costs, otherwise for the plaintiffs for $        debt or damage and costs. In the Court of Common Pleas judgment was rendered for the defendant, and the case has been brought up on exceptions.

The policy has conspicuously displayed in the margin the words, " Non-forfeiture endowment policy with profits." There are cases which, regarding these marginal catch-words as an element of the contract, hold that the policy, at least when converted into a " paid-up " policy, is non-forfeitable. *Cowles* v. *Continental Life Insurance Co.* 63 N. H. 300 ; *Bruce* v. *Continental Life Insurance Co.* 58 Vt. 253. Other cases hold differently. In a recent case against the defendant company, decided by the Supreme Court of Connecticut, to wit, *Holman* v. *Continental Life*

*Insurance Co.* 2 New Eng. Reporter, 833, the sum insured was
$1,000 ; the period of time, ten years ; the annual premium,
$108.72, payable partly in cash, partly by note ; the conditions,
the same as here.  After the payment of two annual premiums,
partly in cash and partly in notes, which remained outstanding,
the insured applied for a " paid-up" policy for $200, agreeing to
pay annually in advance interest on all outstanding notes.  There-
upon the company reissued the policy indorsed as in the case at
bar.  The insured, after paying the interest twice more, stopped,
and at the expiration of the term of the policy brought suit
thereon.  The court held that the " paid-up " policy was in effect
a new policy on the conditions of the old, except in so far as the
conditions of the old were inapplicable, for the reason that no fur-
ther premiums were to be paid, and that therefore it was forfeited
by non-payment of the interest annually in advance on the out-
standing premium notes.  The court, in rendering judgment,
delivered an elaborate opinion, citing numerous cases in its sup-
port.  We think its conclusion correct.  There can be no doubt
that the original policy was liable to forfeiture by such non-pay-
ment, unless its clear provisions are to be overruled because of a
misleading phrase in its margin, as of course they cannot be with-
out proof of fraud ; and in our opinion the " paid-up " policy,
both as reissued and as provided for, is only the original pol-
icy reduced to an amount corresponding to the premiums paid,
so that no further premiums are required. · The expression " paid
up," as used in the provision for the conversion of the original
policy into a " paid-up " policy, is put in quotation marks, as
if the expression were used to designate instead of characterize
it ; and if the expression be so regarded, there is little reason
for supposing that the " paid-up " policy was intended to be any-
thing other than the original policy converted by reducing it as
stated, the conditions, so far as applicable, continuing unchanged.
That the female plaintiff so understood appears from the terms
of her application, and from her receiving back the policy as in-
dorsed.  It seems to us that it is by laying undue stress on the
expression " paid up " that a contrary view has obtained.  The
use of an expression so likely to mislead cannot be too severely
reprehended, but courts should not on that account give an effect

to it which it is not entitled to. We see no reason to doubt that the female plaintiff, if capable of taking the original policy, was also capable of exchanging it under the provisions for conversion into the so-called " paid-up " policy.

The plaintiffs raise the question whether an endowment policy, like the policy taken out by the female plaintiff, is within the purview of our statute. Pub. Stat. R. I. cap. 166, § 21.[1] We see no reason to doubt it. Such a policy, taken out by the assured on her own life, insures it for a term of years. If she dies within the term, it is payable to her legal representatives. The fact that it is payable to her personally if she survives the term, does not make it any the less an insurance on her life, such payment being one of the considerations for taking the policy for such limited term. *Ætna Life Insurance Co.* v. *Mason*, 14 R. I. 583.

The principal ground on which the plaintiffs claim to recover is that the policy was void *ab initio*, because the female plaintiff, being a married woman, was incapable of contracting, and consequently the premiums paid by her, being moneys paid upon a void consideration, can be recovered back as moneys paid to and for her use. The defendant contends that she was capable of entering into a contract of life insurance by force of the statute. Pub. Stat. R. I. cap. 166, § 21. The apparent purpose of this section, however, is not to enable married women to enter into such contracts, but to secure the policy to the extent of ten thousand dollars, when expressed to be for her benefit, " whether effected by herself or by her husband, or by any other person on her behalf," to her separate use, " independently of her husband

---

[1] As follows : —

" Any policy or policies of insurance, or part thereof, which shall not exceed in the aggregate the sum of ten thousand dollars, made by an insurance company on the life of any person, and expressed to be for the benefit of a married woman, whether effected by herself or by her husband, or by any other person on her behalf, shall enure to her separate use and benefit, independently of her husband and of his creditors and representatives, and also independently of any other person effecting the same on her behalf, his creditors and representatives, and such policy may be sued in the name of the person beneficially interested therein, or in the name of the representative of such person."

and of his creditors and representatives, and also independently of any other person effecting the same on her behalf, his creditors and representatives." It is true the section recognizes that a policy of life insurance may be effected by a married woman, but we see no reason to doubt that, independently of section 21, under the other provisions of chapter 166, a married woman could invest her own money, being part of her separate estate, in a proper life insurance policy if she chose, as validly as in a pianoforte or a sewing machine. If, for example, Mrs. McQuitty, instead of paying the first two premiums partly in cash and partly by note, had paid them wholly in cash, and then had taken out a paid-up, a really as well as nominally paid-up policy, we do not think there can be any question but that it would have been valid and that she could oblige the company to pay it. The question then is, whether, supposing she was incapable of binding herself personally by her promissory note, the policy was void because the premiums were paid partly in her notes. Suppose she had died in the second year of the original or in the first year of the "paid-up." policy, before committing any default, could the company have repudiated their contract and successfully resisted the payment of it? We think not. The company would have received the larger part of the premiums in cash, and have secured the remainder by the right reserved in the policy to deduct it from the sum insured. That they had taken notes from the assured which did not bind her personally, would not avail them, since they must be presumed to have known her disability when they took them, and to have relied on their right to deduct, and on the conditions of forfeiture as a sufficient protection. They could not be heard to say that the policy was without consideration. *Chamberlin* v. *Robertson,* 31 Iowa, 408; *Abshire* v. *Mather et al.* 27 Ind. 381; *Glass* v. *Warwick,* 40 Pa. St. 140. But if this be so, the policy was not void *ab initio,* and the company is entitled to set up the forfeiture by non-payment of interest in advance to defeat recovery upon it.

*Exceptions overruled, judgment of Court of Common Pleas affirmed with costs of this court.*

*Edward C. Dubois,* for plaintiffs.

*C. Frank Parkhurst,* for defendant.